**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| -vs-    ) | Case No. CR-05-036-F |
| ) | |
| JON KENT RED ELK,    ) | |
| ) | |
| Defendant.    ) | |

**ORDER ON GOVERNMENT'S MOTION TO REVOKE
MAGISTRATE'S ORDER SETTING CONDITIONS OF RELEASE**

Before the court is the government's Motion to Revoke Magistrate's Order Setting Conditions of Release (docket entry no. 127). The motion was filed on May 4, 2005. The motion lacks factual and legal merit and is accordingly **DENIED**.

    A.    Standard of Review

The standard of review applicable upon review of a magistrate judge's detention or release order is *de novo*. United States v. Cisneros, 328 F.3d 610, 616, n.1 (10th Cir. 2003). No deference is due the factual findings or ultimate conclusion reached by the magistrate judge. *See, generally,* United States v. Burks, 141 F.Supp.2d 1283, 1285 (D. Kan. 2001). However, *de novo* review does not require a *de novo* evidentiary hearing. *Id.* (and authorities cited therein). In this case, the court has an ample evidentiary record upon which to conduct its *de novo* review. For that reason, and because both the government and the defendant have advised the court that they do not desire to supplement the evidentiary record, the court conducts its *de novo* review on the basis of the existing record. The court has the benefit of

transcripts of recorded proceedings which took place on January 11, January 12 and May 2, 2005 before Magistrate Judge Robert Bacharach. Audio recordings of those proceedings have also been provided. The transcripts of those proceedings collectively exceed 140 pages. In addition, the court heard oral arguments on the motion on June 1, 2005.

  B. <u>Factual and Legal History</u>

On January 7, 2005, the defendant either killed (government's version) or significantly assisted in bringing about the death (defendant's version) of Regina Dupler. The defendant was arrested on January 10, 2005. A combined preliminary and detention hearing was originally set for January 11, but the hearing was continued to the next day at the request of the defendant. At the combined preliminary and detention hearing which was held on January 12, the government called FBI agent Deborah Decker and the defendant called his brother, Robert Red Elk. At the conclusion of that hearing, Judge Bacharach found that the government had not carried its burden of establishing that the defendant, if released, would pose a danger to the community. Tr. 82. Judge Bacharach deferred his finding on the issue of flight risk. *Id.* at 83.

On January 19, 2005, Judge Bacharach entered an order of detention pending trial. In that order, Judge Bacharach found that there was a serious risk that the defendant would not appear. In so finding, Judge Bacharach relied upon two factors, viz.: that the defendant faced severe penalties, including the possibility of a death sentence and that the defendant had reportedly been involved with the manufacture and use of illicit drugs. January 19 order (docket entry no. 17), at 1. Judge Bacharach's concerns on this latter point (drug abuse) were supported by the testimony of agent Decker to the effect that a white powdery substance which field

2

tested "presumptively positive for methamphetamine or amphetamines" was found in the defendant's residence on the date of the arrest. Tr. at 11.

There the matter sat until January 24, 2005, when the government notified the defendant, through his counsel, that the application of the death penalty had not been authorized by the Comanche Nation and that the death penalty provision of Title 18, United States Code would therefore not be applicable in this case. This advice was confirmed by the government's notice to the court, filed on February 11, 2005 (docket entry no. 38).

On February 16, 2005, the Grand Jury handed down an indictment, charging the defendant with first degree murder under 18 U.S.C. § 1111(a).

On February 17, 2005, the FBI laboratory in Quantico, Virginia, rendered its report of analysis of the substances which had been found at defendant's residence. As to eight of the specimens, the laboratory finding was that the substance could not be identified, but that "no commonly encountered controlled substances were detected." Four of the specimens were identified as prescription medications. None of the specimens were identified as containing or constituting amphetamine or methamphetamine.

On April 4, 2005, the defendant filed a motion for order reopening the detention hearing and amending the order of detention (docket entry no. 99). In his motion, the defendant argued that, after entry of the January 19 order, circumstances had changed in that, among other things: (i) this was no longer a death penalty case, and (ii) the forensic tests conducted on the substances seized from defendant's home were negative for the presence of controlled substances. April 4 motion, at 3.

On May 2, 2005, Judge Bacharach held a hearing on the April 4 motion. At that hearing, the court heard hearsay testimony pro and con (which, because of its hearsay nature, the court does not find to be persuasive either way) as to whether Misty

Fulsom, a niece of defendant, had changed her story about the defendant's alleged involvement with drugs and as to the results of the FBI lab's analysis, as described in its February 17, 2005 report.

At the May 2 hearing, agent Decker, although acknowledging that she had reviewed the report from the FBI lab, equivocated (remarkably so, and with no evidence which would undermine the credibility of the FBI's report) on the question of whether illicit drugs had been found at defendant's residence. Tr. 21. Although there was no disagreement at the May 2 hearing about the fact that the case was no longer a death penalty case and about the absence of any laboratory analysis suggesting the presence of illicit drugs at defendant's residence, the government continued to argue that there was a "great risk of flight," tr. at 28, relying predominantly on the gravity of the alleged crime and the severity of the prescribed punishment. At the conclusion of that hearing, Judge Bacharach found that the government had not carried its burden of establishing that there was no combination of conditions which would reasonably assure the appearance of the defendant as required. Consequently, Judge Bacharach entered an order setting conditions of release on the basis of a $25,000 unsecured bond with additional conditions of release which included requirements that the defendant not leave the Western District of Oklahoma without approval, that the defendant not contact potential witnesses, that the defendant submit to drug testing as required by the pretrial services office and that the defendant submit to electronic monitoring. Order Setting Conditions of Release, entered on May 2, 2005 (docket entry 126).

The present motion to revoke the magistrate judge's order was filed on May 4, 2005. The defendant has submitted his response to the motion. As has been noted, the parties have informed the court that they do not desire to submit additional evidence on the issue of detention.

4

    C.    <u>Substantive Standard</u>.

Under the Bail Reform Act, the ultimate question to be resolved by the court with respect to pretrial detention is whether there is any condition or combination of conditions of pretrial release which will reasonably assure the appearance of the defendant as required and the safety of any other person and the community. 18 U.S.C. § 3142(e). In the absence of a rebuttable presumption to the contrary under § 3142(e), the statutory preference is for pretrial release. 18 U.S.C. § 3142(b). Detention is required if the court finds that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any person or the community. 18 U.S.C. § 3142(e). In making this determination, the court must take into account the available information with respect to a long list of factors, all as is set forth in § 3142(g). Even where a rebuttable presumption applies (for more about which, see part D, below), the burden of persuasion with respect to risk of flight and danger to the community "always remains with the government." <u>United States v. Stricklin</u>, 932 F.2d 1353, at 1354-55 (10th Cir. 1991).

    D.    <u>Applicability of the Rebuttable Presumption</u>.

In its motion, the government asserts that:

> Title 18, United States Code, Section § 3142(f)(1)(A) and (B) establishes a rebuttable presumption of risk of flight upon a finding that there is probable cause to believe that the person committed a crime of violence the maximum sentence for which is life imprisonment.

Motion, at 2.

In response to this assertion, the defendant points out that § 3142(f)(1) goes no further than to obligate the court to conduct a detention hearing under the conditions set forth in that subsection and that the rebuttable presumption is "a separate aspect of the Bail Reform Act, distinct from the threshold issue of whether a hearing must

5

be conducted." Response, at 4. On the basis of a reading of the plain language of subsections (e) and (f) of 18 U.S.C. § 3142, the court agrees.

The government's assertion cannot even be dignified by calling it a "reading" of the statute, because the language of the statute does not even arguably support the government's position as to the trigger for the rebuttable presumption. The government conceded as much at the January 12 hearing.[1] The government has cited no case law supporting its untenable and previously abandoned argument. The fact that this argument was resurrected in the government's May 4 brief is, to put it mildly, disappointing, although the disappointment is mitigated somewhat by the fact that the government again abandoned this untenable assertion at the hearing on June 1.

Not only did the government assert an untenable position as to the trigger for the rebuttable presumption, the government's brief is also palpably erroneous in its assertion as to just what it is that is rebuttably presumed. If the rebuttable presumption were applicable, it would be a rebuttable presumption that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(e). However, as noted above, the government has stated that the rebuttable presumption is "of risk of flight." Motion, at 2. There is no basis for this assertion.[2]

Thus, the statutory rebuttable presumption is not applicable in this case. If it were applicable, its effect would not be as stated by the government.

---

[1] Following a discussion of the relevant statutory language: "THE COURT [Judge Bacharach]: Do you withdraw your argument that the rebuttal [sic] presumption was [triggered]? Mr. Robinson: Yes." 1/12/05 Tr. at 60-62 (quotation from 62).

[2] If this case were within the scope of the final sentence of § 3142(e) – and it is not – the rebuttable presumption would go to *both* safety and risk of flight. As the government has now conceded for the second time, this case is also not within the second sentence of § 3142(e), that being the sentence that refers to § 3142(f)(1) – the subsection erroneously cited by the government as providing for a rebuttable presumption.

6

E.	Sufficiency of the Government's Factual Showing.

Risk of flight is the only basis for detention which is argued in the government's motion (which is presumably the reason that, in erroneously arguing that the rebuttable presumption has been triggered, the government also erroneously argued that the presumption is of risk of flight). The government asserts, without elaboration, that the nature and circumstances of the alleged offense and the weight of the evidence "demand detention." Motion, at 4. The government also asserts that the seriousness of the offense and the prospect of a mandatory sentence of life imprisonment weigh strongly in favor of detention. *Id.*

In this case, the issues as to the nature and circumstances of the offense and as to the weight of the evidence are uniquely interrelated. At a minimum, the defendant significantly assisted in bringing about the death of Regina Dupler. He admits as much (1/12/05 Tr. at 8 - 9; Response, at 10) but he denies malicious, premeditated murder. Thus, this is a murder case in which the legal and factual contest as to the defendant's state of mind may predominate over the contest with respect to the defendant's actual physical acts. On the question of whether the defendant was significantly involved in bringing about the death of Regina Dupler, the weight of the evidence, at least for present purposes, is nearly conclusive. As to his state of mind, viewed in light of the relevant substantive statutory provisions, the matter is not so clear. In any event, what is clear is that, under the Bail Reform Act, the strength of the evidence against the defendant is neither an immutable proxy for flight risk nor a basis upon which the defendant should be required, before trial, to get started on his life sentence.

On the issue of risk of flight, the government's most persuasive point is that, if convicted, the defendant faces a mandatory sentence of life imprisonment. The court cannot easily dismiss this as a weighty factor favoring detention. Indeed, the

7

cases in which this factor, in combination with others, would reasonably and logically result in detention are so numerous that it can fairly be said that murder defendants are granted pretrial release only in unusual cases. This is such a case. Having had the opportunity to evaluate the defendant's demeanor both in open court and in an *ex parte* proceeding, and having reviewed the record as to the defendant's unquestionably extensive ties both to his family and to his geographic community, the court concludes that the government has not carried its burden of establishing by a preponderance of the evidence that the defendant poses a serious flight risk.

Accordingly, the court **DENIES** the government's motion to revoke the magistrate judge's order. In so doing, the court notes that a material factor in the court's analysis is the court's expectation that the defendant will scrupulously comply with the conditions of release which were established by Judge Bacharach.

DATED June 1, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0036p025 (pub) .wpd