IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | Case No. CR-05-036-F |
| ) | |
| JON KENT RED ELK, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Before the court is Defendant's Second Motion for Order Staying Proceedings, filed September 16, 2005 (doc. no. 224). Plaintiff filed its response to the motion on September 23, 2005 (doc. no. 229). Upon review of the parties' submissions, the court makes its determination.

Defendant moves to stay the proceedings in this case until a properly constituted petit jury can be selected. Defendant contends that this district's jury selection process, wherein petit jurors are selected at random from voter registration lists, systematically excludes African-Americans, Native Americans, Asians, and Hispanics from jury service and violates the equal protection component of the Fifth Amendment and the fair-cross-section requirement of the Sixth Amendment. In addition, defendant contends that the jury selection process violates the Jury Selection and Service Act of 1968, as amended, 28 U.S.C. §§ 1861, *et seq*. ("Jury Act").[1]

---

[1] Defendant previously challenged the jury selection process as to the 2001 qualified jury wheel for the Oklahoma City Division. That challenge was rejected by the court (doc. no. 92). Defendant, who will now be tried by petit jurors drawn from the 2005 qualified jury wheel for the Oklahoma City Division, similarly challenges the jury selection process as that jury wheel.

In order to establish a prima facie violation of the equal protection component of the Fifth Amendment, "[d]efendant must show that the use of voter registration lists resulted in the substantial underrepresentation over a significant period of time of a recognizable, distinct class." United States v. Gault, 141 F.3d 1399, 1402 (10th Cir. 1998), *cert. denied*, 525 U.S. 910 (1998) (internal quotation omitted). "A selection process which is susceptible of abuse or is not racially neutral supports a presumption of discrimination." *Id.* (internal quotation omitted). In order to establish a prima facie violation of the Sixth Amendment fair-cross-section requirement, defendant must show:

> (1) that the group alleged to be excluded is a distinctive group in the community; (2) that the representation of this group in jury venires is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Id.*

Because the Jury Act codifies the Fifth and Sixth Amendment rights, *see*, 28 U.S.C. §§1862 and 1861, defendant's statutory claims are evaluated under identical standards. United States v. Shinault, 147 F.3d 1266, 1270 (10th Cir.), *cert. denied*, 525 U.S. 988 (1998).

"In determining whether a group has been underrepresented on jury venires, 'courts generally rely on two methods of comparison, absolute disparity and comparative disparity.'" Shinault, 147 F.3d at 1272 (quoting Gault 141 F.3d at 1401-02). "Absolute disparity measures the difference between the percentage of a group in the general population and its percentage in the qualified wheel." *Id*. Comparative disparity assesses the "*decreased likelihood* that members of an underrepresented group will be called for jury service, in contrast to what their presence in the community suggests it should be." United States v. Chanthadara, 230 F.3d 1237,

1257 (10th Cir. 2000), *cert. denied*, 534 U.S. 992 (2001)(quoting Shinault, 147 F.3d at 1272).  Comparative disparity is "'determined by dividing the absolute disparity of the group by that group's percentage in the general population.'"  *Id*.

From defendant's briefing, it appears that the relevant absolute and comparative disparity figures are as follows:

| **Distinctive Group** | **African-Americans** | **Native Americans** | **Asians** | **Hispanics** |
|---|---|---|---|---|
| Absolute Disparity | 3.55 | .31 | .83 | .88 |
| Comparative Disparity | 40.04 | 8.09 | 34.27 | 16.82 |

In the Tenth Circuit, "'absolute disparity . . . is the starting place for all other modes of comparison.'"  Shinault, 147 F.3d at 1273 (quoting United States v. Yazzie, 660 F.2d 422, 427 (10th Cir. 1981), *cert. denied*, 455 U.S. 923 (1982)).  The greatest absolute disparity in this case is 3.55% for African-Americans.  However, within the Tenth Circuit, absolute disparities of 4.29% and 7% have been found insufficient to establish a prima facie violation.  *See*, Yazzie, 660 F.2d at 427; Gault, 141 F.3d at 1402-03.

The greatest comparative disparity is 40.04% for African-Americans.  However, in Chanthadara, the Tenth Circuit determined that a comparative disparity for African-Americans of 40.89%, where that group comprised 7.9% of the population, failed to establish a prima facie case.  *See*, Chanthadara, 230 F.3d at 1257.  In this case, the court concludes that the 40.04% comparative disparity for African-Americans, who make up 8.86% of the population, is likewise insufficient to establish a prima facie violation.

In light of the relevant Tenth Circuit authority, the court is unable to find that the absolute and comparative disparity figures cited by defendant are so "gross" or "marked" as to establish a substantial underrepresentation under the Fifth Amendment or that the representation of the distinctive groups on the jury panel is not fair and

3

reasonable under the Sixth Amendment. *See*, Gault, 141 F.3d at 1403.  Therefore, the court concludes that defendant cannot make out a prima facie case under either the Fifth or Sixth Amendments relating to the jury selection procedure for the 2005qualified jury wheel for the Oklahoma City Division.

In his briefing, defendant also relies upon the standard deviation calculation for African-Americans (the difference between the expected number of African-Americans on the qualified jury wheel (8.86%) and the actual number (5.31%)), to establish a prima facie violation.  However, as did the Tenth Circuit in Chanthadara, this court finds defendant's standard deviation calculation unhelpful.  Chanthadara, 230 F.3d at 1257.  That calculation represents a manipulation of the same numbers which were not sufficient to establish prima facie violations under the Fifth and Sixth Amendments.  *Id*.

Where a challenge is mounted under the Sixth Amendment, the absence of a prima facie case will be fatal.  Chanthadara, 230 F.3d at 1257 (prima facie violation not shown, district court therefore did not err in denying the motion).  *See also*, to the same effect, Shinault at 1273; United States v. Contreras, 108 F.3d 1255, 1268 (10th Cir.), *cert. denied* 522 U.S. 839 (1997); Yazzie, 660 F.2d at 428.  Likewise, under the Fifth Amendment, the absence of a prima facie showing is fatal.  Contreras at 1268-69; Yazzie at 428.  While defendant concedes that the disparities in the minority representation observed in the 2005 jury wheel were insufficient to establish a prima facie violation of the Fifth and Sixth Amendments, *see*, defendant's motion, at p. 6, defendant contends that a prima facie showing may also be established through other categories of evidence. Defendant argues that specific features of this district's jury selection system work to disproportionately exclude minorities from jury service.  According to defendant, the cited features, coupled with the significant and recurring minority underrepresentation in the district's jury wheel, establish a prima facie

4

showing violation of the Fifth and Sixth Amendments. *Id*. at p. 7. The court disagrees. Even assuming that the Tenth Circuit would find that prima facie violations under the Fifth and Sixth Amendments may be established without reference to the specific disparity levels, the court concludes that defendant has failed to present sufficient evidence to establish prima facie violations of the Fifth and Sixth Amendments. The court concludes that the evidence submitted by defendant is not sufficient to establish a substantial underrepresentation under the Fifth Amendment or to establish that the representation of the distinctive groups on the jury panel is not fair and reasonable under the Sixth Amendment. And the inability to establish the prima facie case is fatal to defendant's Fifth and Sixth Amendment challenges in regard to the petit jury.

The court also concludes that defendant's challenge under the Jury Act fails. The absence of a prima facie showing under the Fifth and Sixth Amendments is fatal to similar challenges under the Jury Act. Yazzie, 660 F.2d at 428. In addition, the court rejects defendant's contention that the court's failure to use driver and identification licensees as a supplemental source of prospective jurors violates 28 U.S.C. §1863(b)(2). Section 1863(b)(2) does provide that "[t]he plan shall prescribe some other source or sources of names in addition to voter lists where necessary to foster the policy and protect the rights secured by sections 1861 and 1962 of this title." However, defendant, as the court has found, has not demonstrated a substantial underrepresentation or deviation from the fair-cross-section requirement. Therefore, supplementation of voter lists by the use of driver and identification licensees is not necessary, as the policy and rights secured by §§1861 and 1862 are in fact being fostered and protected. *See*, Yazzie, 660 F.2d at 429.

Based upon the foregoing, Defendant's Second Motion[2] for Order Staying Proceedings, filed September 16, 2005 (doc. no. 224), is **DENIED**.

DATED October 3, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0036p063(pub).wpd

---

[2] As has been noted, the present motion is defense counsel's second jury wheel challenge in this case. Mr. Peterson has mounted similar challenges in other cases, e.g., United States v. Bolden, Case No. CR-99-59, U.S.D.C.W.D.Okla. (doc. 205), and United States v. Orange, Case No. 98-44, U.S.D.C.W.D.Okla. (doc. 421). These ongoing efforts to populate juries in this district with individuals who are, in Judge O'Brien's words, unwilling to "expend some effort to participate in the most fundamental processes of representative government [by registering to vote]," United States v. Orange, No. 02-6112, O'Brien, J., dissenting from Order on Petition for Rehearing, at 1 (10th Cir., April 17, 2003), thus amount to an ongoing cause, if not an ideological crusade – illustrating the fact that there is sometimes a difference between advocating a cause and representing a client. This is worthy of note, and of at least some legal relevance, *see, id.,* majority opinion at 4, because, taking the nature of Mr. Red Elk's defense in this case into account, it is by no means clear that he would be better off with a jury of driver's license holders than he will be with a jury of registered voters. If there is a difference, relevant to this case, between a driver's license jury and a voter registration jury, it may be that a jury of voters would possess an increment of sophistication devoutly to be desired by a defendant who hopes to sway the jury in his favor with his assertion that, in his words, "he assisted Regina Dupler in her efforts to commit suicide." (Doc. 99, at 1.)