**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>JON KENT RED ELK, )<br>)<br>Defendant. ) | Case No. CR-05-036-F |

**ORDER**

Before the court is the defendant's Second Motion to Suppress, filed on August 9, 2005 (doc. no. 179). The government responded to the motion on August 16, 2005 (doc. no. 195). The court held a hearing on the motion on September 22, 2005. The proceedings at that hearing have been transcribed. After the hearing, the defendant filed a supplemental brief in support of his motion to suppress (doc. no. 232), to which the government responded (doc. no. 238). The court has thoroughly considered the legal and factual arguments in support of and in opposition to the motion and has concluded, albeit reluctantly, that the motion must be **DENIED**.

In Massiah v. United States, 377 U.S. 201 (1964), the Supreme Court held that the Sixth Amendment does apply to postindictment communications between the accused and agents of the government and that, consequently, the defendant was denied the basic protections of the Sixth Amendment when the government used against him at trial "his own incriminating words, which federal agents had deliberately elicited from him." *Id.* at 206. The Supreme Court confirmed the

application of the Massiah rule in a cellmate situation in United States v. Henry, 447 U.S. 264 (1980).  In Henry, the incriminating statements were made to an informant who was in the pay of the Federal Bureau of Investigation.  Although the FBI agent told the informant not to initiate any conversation with Mr. Henry about the bank robbery involved in Henry's case, it was clear that the informant was "acting under instructions as a paid informant for the government," *id.* at 270, and that, in fact, he was essentially "on a contingent fee basis." *Id.*  Thus, the informant was "acting by prearrangement as a government agent." *Id.* at 273.  The court concluded that, in these circumstances, Henry's statements to the informant should not have been admitted because the government intentionally created a situation likely to induce Henry to make incriminating statements without the assistance of counsel, in violation of the Sixth Amendment.  *Id.* at 274.

     Four years after the Henry decision, the Tenth Circuit handed down its decision in United States v. Geittmann, 733 F.2d 1419 (10th Cir. 1984).  The circuit court's reading of Massiah and Henry quite understandably controlled the analysis in Geittmann.  In Geittmann, the informant, by express prearrangement with the government, recorded conversations with the defendant both before and after he was indicted.  *Id.* at 1424.  Geittmann asserted that the post-indictment recordings were obtained in violation of his rights under the Fifth Amendment and the Sixth Amendment.  *Id.*  Geittmann consented to a non-jury trial, reserving his right to appeal on the basis of the use of the post-indictment recordings.  The Court of Appeals reversed.  The circuit court discussed the Massiah and Henry cases at length.  The court differentiated the case before it from "a case in which independent parties come to police with unsolicited incriminating information provided by defendants." *Id.* at 1427.  It is clear that the court's conclusion in Geittmann was substantially predicated upon the fact that "the government deliberately created a situation in which the

indicted defendant would be likely to incriminate himself in the absence of counsel." *Id.* at 1427.

The Tenth Circuit's approach to Massiah/Henry problems was expounded again in United States v. Taylor, 800 F.2d 1012 (10th Cir. 1986), *cert. denied* 484 U.S. 838 (1987). In Taylor, the circuit court articulated a two-pronged test. The court stated that in order to find a violation of a defendant's Sixth Amendment right to counsel, the court must find that the defendant's statements (i) were made to a government agent, and (ii) were deliberately elicited. *Id.* at 1015. The court held that the protections enunciated in Massiah and Henry are not available, even after the right to counsel has attached, when the statements made by the defendant are made to an individual who is not an agent for the government even though he may be a government informant. "This is so regardless of whether the statements were 'deliberately elicited.'" *Id.* at 1015. In concluding that the informant was not a government agent, the court noted that any benefits he might have hoped to have obtained as a result of his service as an informant "were mere expectancies." *Id.* at 1016.

United States v. Johnson, 4 F.3d 904 (10th Cir. 1993), *cert. denied* 510 U.S. 1123 (1994), is also instructive. In Johnson, the circuit court had before it a case in which the informant recorded conversations with the defendant pursuant to a plan concocted by the informant and his attorney. The government did not explicitly authorize the recording activity by the informant, but the defendant argued that an implicit agreement existed between the government and the informant under which the informant would receive a benefit for his cooperation. On this score, the Court of Appeals concluded that an agreement with the government need not be express in order to support a finding that an informant is a government agent. *Id.* at 910. The court also noted that the informant "certainly hoped that he would receive a benefit

3

for his cooperation," even though he testified that he understood that the government did not promise him a reward in exchange for his cooperation. *Id.* at 911. Focusing on the fact that the government "did not initiate the contact, did not advise or instruct [the informant], and did not play a role in the tape recording of the defendant's phone calls," the court concluded that no Sixth Amendment violation had occurred. *Id.* at 912. The court summarized its reasoning by stating that it would not "handicap legitimate investigations by assuming that any time the government is approached by a would-be informant and eventually uses evidence obtained by that informant, an implicit agency relationship is established." *Id.* at 912.[1]

The proposed informants in this case are Daun Blakes and James Hamilton.

The statements which Mr. Red Elk allegedly made to Mr. Blakes, which Red Elk seeks to suppress, were made (if they were made at all, as the court assumes for present purposes) several weeks before Mr. Blakes entered into his plea agreement in early April, 2005. He pleaded guilty on April 18, 2005, and now awaits sentencing. Mr. Blakes had his interview with the FBI in July, 2005, wherein he recounted his alleged conversation with Mr. Red Elk. Mr. Blakes was not directed by anyone acting on behalf of the government to engage in any conversations with Mr. Red Elk or even to listen to anything Mr. Red Elk might have to say. The only contact between Mr. Blakes and the government with respect to anything Mr. Red Elk may have said occurred long after the alleged conversations occurred and long after the plea agreement was entered into.

---

[1] The court reviewed other relevant authorities at some length at the September 22 hearing (tr., pp. 10-20). For the benefit of a reviewing court, that analysis of other case law is available in the transcript, so it will not be repeated here. Suffice it to say for present purposes that a discussion of the controlling cases need not encompass cases other than <u>Massiah</u>, <u>Henry</u>, <u>Geittmann</u> and <u>Taylor</u>.

Mr. Hamilton was arrested in December, 2004. He claims to have had two conversations with Mr. Red Elk, one of which occurred before the plea agreement between Hamilton and the government was executed in early April, 2005, and one of which occurred after that plea agreement was executed. On July 15, 2005, Mr. Hamilton was sentenced to serve a term of 106 months of incarceration, following which he wasted little time getting in touch with the government to report his purported conversations with Mr. Red Elk.

Mr. Hamilton had no contact with anyone acting on behalf of the government *vis-a-vis* Mr. Red Elk until after his conversations with Mr. Red Elk. He was never directed by anyone with the government to have any contact with Mr. Red Elk.

Neither Blakes nor Hamilton acted as agents for the government in holding their purported conversations with Mr. Red Elk. Although both Blakes and Hamilton doubtless hoped to reap some benefit by virtue of becoming informants, the circumstances surrounding their conversations with Mr. Red Elk simply do not bring this case within the governing principles with respect to agency status as established in Henry, Geittmann, and Taylor. With respect to Mr. Laster, asserted by Mr. Red Elk to be a source of tainting information conveyed to Messrs. Blakes and Hamilton, there is an entire failure of proof on the issue of agency status.

Because the court finds that the informants in this case were not agents of the government at the time they had their conversations, it is not necessary for the court to make a finding as to the believability of their claims that they did not *elicit* the inculpatory statements they quote Mr. Red Elk as having made.

Accordingly, the court can only conclude that the second motion to suppress must be, and hereby is, **DENIED**. That said, if it should appear at a later stage of this case that an otherwise marginal case against Mr. Red Elk was bolstered in an arguably decisive way by the testimony of jailhouse informants, that will present an

exceptionally serious matter for the court's consideration under Rule 29. The evidence supporting a "conviction must be substantial and do more than raise a suspicion of guilt." <u>United States v. Valadez-Gallegos</u>, 163 F.3d 1256, 1262 (10th Cir. 1998). In making this comment, the court does not prejudge any issues and does not discount the possibility that the government will present "substantial" evidence apart from the testimony of the jailhouse informants. However, jailhouse informant testimony, by its very nature, would seem unlikely to suffice to move the quality of the evidence across the line into the "substantial" category.

DATED October 6, 2005.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

05-0036p073(pub).wpd